IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Civil Action No.: 1:25-cv-287

| | |
|---|---|
| MCKIBBON HOTEL GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> EMPLOYERS INSURANCE COMPANY OF WAUSAU, <br><br> Defendant. | COMPLAINT <br> (Jury Demand) |

Plaintiff McKibbon Hotel Group, Inc. ("McKibbon") alleges and says as follows for its Complaint against Defendant Employers Insurance Company of Wausau ("Wausau"):

## NATURE OF THE ACTION

1. In this case, McKibbon seeks approximately $12,500,000.00 in business interruption losses it suffered at eight (8) hotel properties, parking garage facilities, and food and beverage outlets it owns in Asheville, North Carolina, stemming from the devastation caused by Hurricane Helene.

2. McKibbon paid nearly $1.4 million in annual premiums to obtain insurance coverage protecting the company against these types of losses. But Defendant Wausau, the Liberty Mutual company that provided the coverage, has refused to pay McKibbon anything. This is so even though the policy provides specific "Time Element" coverage protecting the interruption of McKibbon's business caused

by a wide variety of loss events, including named storms, floods, and earth movement.

3. McKibbon suffered and continues to suffer substantial business interruption losses and seeks through this action to recover the benefits that its premiums purchased.

## THE PARTIES

6. McKibbon is a Georgia corporation with its principal place of business at 402 Washington Street SE, Suite 200, Gainesville, Georgia. McKibbon, by and through various related party affiliates, develops and manages hotels and food and beverage outlets throughout the southeastern United States, including in Asheville, North Carolina.

7. Employers Insurance Company of Wausau is an insurance company incorporated under the laws of the state of Wisconsin with its principal place of business in Massachusetts. Wausau is an indirect subsidiary of Liberty Mutual Holding Company, Inc. Wausau is licensed to transact business in North Carolina and is engaged in the business of providing insurance in this State.

## JURISDICTION AND VENUE

8. This Court has personal jurisdiction over Wausau because Wausau is licensed to transact insurance business in North Carolina, has in fact transacted insurance business in North Carolina (including by issuing the policy at issue in this action), and because the events giving rise to McKibbon's claims under the policy occurred in North Carolina.

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum of $75,000.00, exclusive of interests and costs, and Plaintiff and Defendant are citizens of different states: Plaintiff McKibbon is a Georgia citizen, and Defendant Wausau is a citizen of Wisconsin and Massachusetts.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to McKibbon's claims occurred in this District.

**FACTUAL BACKGROUND**

**A. The Policy**

11. On May 31, 2024, Wausau issued to McKibbon a Liberty Mutual Insurance Premier Property Protector Policy, with policy number YAC-L9L-471758-014 (the "Policy").

12. The Policy term began on May 31, 2024, and continued through May 31, 2025.

13. The Policy is an "all-risks policy," which insured McKibbon's covered properties "against all risks of direct physical loss or damage," unless coverage of those risks is expressly excluded or limited by the Policy.

14. The Policy insured 28 McKibbon properties, including the following 8 McKibbon properties located in Asheville, North Carolina (the "Covered Properties"):

    a. AC Hotel – 10 Broadway Street, Asheville, NC 28801;

    b. Kimpton Hotel Arras – 7 Patton Avenue, Asheville, NC 28801;

  c. Arras Management – 7 Patton Avenue, Asheville, NC 28801;

  d. Bargello – 7 Patton Avenue, Asheville, NC 28801;

  e. District 42 – 7 Patton Avenue, Asheville, NC 28801;

  f. Aloft Asheville Downtown – 51 Biltmore Avenue, Asheville, NC 28801;

  g. Moxy Asheville – 61 Biltmore Avenue, Asheville, NC 28801;

  h. Broadway Deck Parking Garage – 16 Broadway Street, Asheville, NC 28801.

15. Included in its Premier Protector Policy was business interruption or "Time Element" coverage, which insured McKibbon against economic losses arising from the interruption of its business caused by the types of loss events covered by the Policy. The Time Element coverage includes loss resulting from either On or Off Premises Interruption of Services, Ingress/Egress, and Attraction Property and Civil or Military Authority Coverage.

16. The Policy's Time Element Coverages insure against the actual loss sustained due to the necessary interruption of McKibbon's business at the Covered Properties directly resulting from a type of loss insured by the Policy. The Policy defines these actual losses to include lost *GROSS EARNINGS*, lost *GROSS PROFIT*, and the EXTRA EXPENSE to temporarily continue normal operations at the Covered Properties after a loss event.

17. The Policy also provides coverage for Property Damage, which includes losses arising from Off Premises Interruption of Services.

18. The Policy provides coverage for physical loss or damage at the Covered Properties resulting from a named storm, flood, earth movement, and interruption of incoming utility services, including water service.

**B.   Hurricane Helene and Resulting Losses at the Covered Properties**

19. On September 27, 2024, Hurricane Helene struck western North Carolina. It caused extensive damage to the City of Asheville and surrounding areas.

20. Among other damage, the storm ruptured both a main water line and a backup bypass water line that serviced the City of Asheville, including McKibbon's Covered Properties, leaving hundreds of thousands of residents without water.

21. This event resulted in the total loss of incoming water service to McKibbon's Covered Properties from September 27, 2024, to October 16, 2024.

22. Even after incoming water service was restored, the water provided to the Covered Properties was not potable because Hurricane Helene caused increased turbidity in the water reservoir that served a large portion of the City of Asheville, including the Covered Properties.

23. McKibbon's Covered Properties did not begin receiving potable water until November 18, 2024.

24. McKibbon could not resume normal operations at the Covered Properties until November 18, 2024, when potable water became available.

25. While its Covered Properties were without potable water, McKibbon incurred numerous additional costs to attempt to operate the Covered Properties. These additional expenses included the costs to bring in tankers of potable water to

allow guests—primarily hurricane aid and relief workers and other essential personnel—to use toilets, showers, and sinks at the Covered Properties.

26. In addition to the debilitating damage it caused to Asheville's water system, Hurricane Helene caused substantial damage to many roads in Asheville and throughout western North Carolina.

27. As a result of this damage, the North Carolina Department of Transportation ("NCDOT") issued a statement on October 1, 2024, that all roads in western North Carolina should be considered closed and that travel in the area should be limited to local and hurricane response.

28. NCDOT also posted a map of road closures that included the geographical area in which the Covered Properties are located.

29. These NCDOT-directed road closures prevented ingress to and egress from the Covered Properties from October 1, 2024, until approximately October 10, 2024.

30. Even before the NCDOT-directed road closures, all ingress to and egress from the Covered Properties was prevented by Helene-related damage beginning on September 27, 2024.

31. McKibbon's Covered Properties did not suffer significant tangible physical damage as a result of Hurricane Helene.

32. Other properties were not so fortunate. Properties throughout the City of Asheville and within a mile of McKibbon's Covered Properties—including music

- 6 -
Case 1:25-cv-00287-MR-WCM    Document 1    Filed 08/27/25    Page 6 of 15

venues, local breweries, and numerous shops, galleries, and restaurants—suffered a variety of physical damage as a result of Hurricane Helene.

33. McKibbon's Covered Properties depend on these attractions to attract customers.

34. The damage at attraction properties near the Covered Properties varied. Some of the properties suffered flood damage, downed trees, wind damage, and the like. Like McKibbon's Covered Properties, many of the attraction properties had no water or electricity for several weeks. A number of the properties were closed for weeks or months while they were repaired and made ready to resume operations.

35. McKibbon's inability to use its Covered Properties for their intended purposes from September 27, 2024, to November 18, 2024, constituted a direct physical loss resulting from Hurricane Helene.

36. McKibbon's inability to use its Covered Properties from September 27, 2024, to November 18, 2024, also gave rise to business interruption losses during that period.

37. Since McKibbon resumed normal operations of the Covered Properties on November 18, 2024, it has continued to suffer business interruption losses at the Covered Properties as travel to and economic activity in and around Asheville has remained significantly depressed as a result of damage inflicted by Hurricane Helene. McKibbon's business interruption losses are ongoing.

## C. Wausau's Wrongful Denial of Coverage Under the Policy

38. McKibbon provided Wausau with notice of its losses and claim for coverage on September 30, 2024, in compliance with the Policy.

39. Wausau denied all coverage by letter dated January 7, 2025.

40. Wausau's denial of coverage was based in substantial part on a strained and incorrect interpretation of Part Two of the Limits of Liability Table in the Policy, which indicates "NCP" (No Coverage Provided) for certain indirect or consequential economic losses arising from a loss event that triggers the Policy's *FLOOD* coverage.

41. Wausau's argument against coverage distorts the Policy provisions in an effort to avoid providing coverage under the expansive Policy that Wausau issued and for which McKibbon paid substantial premiums.

42. McKibbon responded to Wausau's denial of coverage in writing on January 29, 2025.

43. Wausau notified McKibbon on April 28, 2025, that its coverage position was unchanged.

44. Because Wausau wrongfully denied coverage for McKibbon's losses, McKibbon was forced to engage counsel to secure the coverage Wausau promised in exchange for McKibbon's premium payments.

45. On July 14, 2025, through counsel, McKibbon responded to Wausau's second denial of coverage in writing.

46. In its July 14 letter, McKibbon identified multiple Policy provisions that provide coverage for McKibbon's losses.

47. Policy Section III (Time Element Coverage) provides coverage for the actual loss sustained, including lost gross earnings, lost gross profits, and extra expense incurred, directly resulting from losses of the type insured by the Policy. This provision permits recovery of lost gross earnings and extra expense from the date the loss begins through the date the covered property could be made ready for operations under the same or equivalent physical and operating conditions that existed before the loss, which period may be extended for up to 365 days to cover the gross earnings loss sustained due to the reduction in sales resulting from the interruption of business. Section III of the Policy permits recovery of lost gross profits for the entire period that the business's results are directly affected by the physical loss or damage at issue, not limited by the expiration of the Policy's term.

48. Policy Section III.E.1 provides coverage for the actual loss sustained and EXTRA EXPENSE resulting from loss or damage of the type insured by the Policy at an attraction property within 1 statutory mile of the Covered Properties.

49. Policy Section III.E.8 provides coverage for the actual loss sustained and EXTRA EXPENSE resulting from the prevention of ingress to or egress from the Covered Properties that is a direct result of physical loss or damage of the type insured by the Policy.

50. Policy Section III.E.9 provides coverage for the actual loss sustained and EXTRA EXPENSE resulting from the interruption of usable incoming water services caused by physical loss or damage of the type insured by the Policy at the water supplier's facilities.

51. Policy Section III.E.10 provides coverage for actual loss sustained and EXTRA EXPENSE directly resulting from physical loss or damage of the type insured by the Policy to water systems at or within 1,000 feet of the Covered Properties.

52. Policy Section IV.E provides coverage for physical loss or damage to Covered Properties resulting from a NAMED STORM.

53. Policy Section II.C.2.j provides coverage for physical loss or damage of the type insured by the Policy at the Covered Properties resulting from the lack of incoming water services caused by an event away from the Covered Properties.

54. McKibbon's claimed losses are covered by these Policy provisions.

55. There are no exclusions in the Policy that would bring McKibbon's claims outside of the grants of coverage identified above.

56. Part Two of the Policy's Limits of Liability Table does not exclude coverage of McKibbon's claimed losses. That Table, at most, indicates that no coverage is provided for indirect or consequential economic losses when the Covered Properties themselves have suffered direct physical loss or damage from a *FLOOD*, *i.e.*, direct, tangible water or other damage from flood waters at the Covered Properties.

57. The *FLOOD* exception in Part Two of the Limits of Liability Table does not apply where the Covered Properties have not experienced direct physical damage as the result of a *FLOOD*.

58. McKibbon explained these bases for coverage in its July 14, 2025, letter to the Liberty Mutual property adjuster assigned to its claim.

- 10 -
Case 1:25-cv-00287-MR-WCM    Document 1    Filed 08/27/25    Page 10 of 15

59. Wausau unjustifiably and in bad faith failed and refused to provide coverage for McKibbon's losses resulting from Hurricane Helene.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**(Declaratory Judgment under 28 U.S.C. § 2201(a))**

60. McKibbon realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

61. Pursuant to 28 U.S.C. § 2201(a), McKibbon seeks a judicial determination of its rights, and of Wausau's obligations and duties to provide coverage, in accordance with the Policy.

62. Pursuant to the terms of the Policy, Wausau is obligated to provide coverage for McKibbon's business interruption losses resulting from Hurricane Helene.

63. A case of actual controversy exists between McKibbon and Wausau with respect to the extent of Wausau's duty to provide coverage for McKibbon's business interruption losses under the Policy.

64. The requirement under Article III of an actual case or controversy that is definite and concreate, touching the legal relation of parties with adverse interests, is satisfied here, where McKibbon has claimed coverage under the Policy and Wausau has denied coverage in full.

65. Issuance of a declaratory judgment is appropriate here, where the issuance of declaratory relief by this Court will resolve some or all of the existing controversy between McKibbon and Wausau by clarifying the legal relationship of the

parties under the Policy and affording relief from the controversy that has given rise to this Complaint.

66. Pursuant to 28 U.S.C. § 2202, McKibbon seeks such further necessary or proper relief as the Court may find equitable and just, including attorneys' fees and costs.

**SECOND CLAIM FOR RELIEF**
**(Breach of Contract)**

67. McKibbon realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

68. The Policy is a valid and enforceable contract that requires Wausau to provide coverage for any covered losses McKibbon incurs, up to the Policy limits and pursuant to the Policy terms.

69. McKibbon's business interruption losses are covered losses under the Policy.

70. McKibbon incurred these covered losses during the Policy term.

71. No Policy condition or exclusion bars coverage of McKibbon's business interruption losses.

72. Wausau wrongfully denied coverage to McKibbon.

73. By wrongfully denying coverage to McKibbon, Wausau breached a contract: the Policy.

74. As a result of Wausau's breach, McKibbon has incurred and will incur reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses to secure the benefits promised under the Policy.

75. As damages for Wausau's breach of contract, McKibbon is entitled to recover the benefits promised under the Policy and all reasonable legal fees and expenses incurred, as well as pre- and post-judgment interest available under applicable law.

76. The total amount of damages for which Wausau is liable upon this claim is an amount in excess of $75,000.00, plus interest.

### THIRD CLAIM FOR RELIEF
### (Unfair and Deceptive Trade Practices in Violation of N.C. Gen. Stat. § 58-63-15 and § 75-1.1)

77. McKibbon realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

78. Wausau's actions and practices with regard to McKibbon's claim under the Policy were in or affecting commerce.

79. Wausau's actions and practices with regard to McKibbon's claim were unfair, deceptive, unethical, unscrupulous, improper, and unlawful in the business of insurance, including but not limited to, by:

    a. Misrepresenting Policy provisions relating to coverages at issue;

    b. Failing to attempt in good faith to effect prompt, fair, and equitable settlements of McKibbon's claims, for which coverage has become reasonably clear;

    c. Compelling McKibbon to initiate litigation to recover amounts due under the Policy by offering substantially less than the amounts that ultimately will be recovered;

    d. Attempting to settle McKibbon's claim for less than the amount to which a reasonable insured would have believed it was entitled; and

  e. Failing to promptly provide a reasonable explanation of the basis in the Policy for denial of a claim.

N.C. Gen. Stat. § 58-63-15(11)(a), (f), (g), (h), and (n).

  80. As set forth in N.C. Gen. Stat. § 58-63-15, Wausau's conduct is a *per se* violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1 *et seq*.

  81. As a direct and proximate result of Wausau's unfair or deceptive trade practices, as described herein, McKibbon has sustained actual damages.

  82. As a result of Wausau's unfair or deceptive trade practices, McKibbon has sustained damages in excess of $75,000.00, and further is entitled to recover treble damages pursuant to N.C. Gen. Stat. § 75-16.

  83. McKibbon is also entitled to a discretionary award of its attorneys' fees, pursuant to N.C. Gen. Stat. § 75-16.1, plus pre- and post-judgment interest available under applicable law.

## PRAYER FOR RELIEF

**WHEREFORE**, McKibbon Hotel Group, Inc. respectfully requests the Court afford it the following relief:

  1. That the Court enter a judgment declaring McKibbon's rights and Wausau's obligations with respect to coverage under the Policy, including that Wausau is contractually obligated to provide coverage for McKibbon's claimed losses;

  2. That McKibbon have and recover of Wausau for all of its actual, consequential, compensatory, general, special, and other like damages, to the greatest extent permitted by law, in an amount in excess of $75,000.00;

3. That McKibbon have and recover of Wausau treble damages, to the greatest extent permitted by law;

4. That McKibbon have and recover of Wausau all costs, interest, and attorneys' and experts' fees, to the greatest extent permitted by law;

5. That McKibbon have and recover of Wausau pre- and post-judgment interest available under applicable law; and

6. That McKibbon have all other and further relief as may be just and proper, in the discretion of this Honorable Court.

## DEMAND FOR JURY TRIAL

In accordance with Rule 38 of the Federal Rules of Civil Procedure, McKibbon demands a trial by jury of all issues so triable.

Dated: August 27, 2025

*/s/ David C. Wright, III*
David C. Wright, III
N.C. Bar No. 11161
DWright@rbh.com

Travis S. Hinman
N.C. Bar No. 50779
THinman@rbh.com

Steven G. Joseph
N.C. Bar No. 59863
SJoseph@rbh.com

Attorneys for Plaintiff

ROBINSON, BRADSHAW & HINSON, P.A.
600 S. Tryon St., Ste. 2300
Charlotte, North Carolina 28202
Telephone: 704.377.2536
Facsimile: 704.378.4000